## IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF FLORIDA
## TALLAHASSEE DIVISION

**DWAYNE FAULKNER,**

   **Plaintiff,**

**vs.**                                  **Case No. 4:19-CV-00343-MCR-MAF**

**CAPTAIN MACK,**
**et al.**

   **Defendants.**
_____/

## REPORT AND RECOMMENDATION

Plaintiff, Dwayne Faulkner, an inmate proceeding *pro se* and *in forma pauperis*, initiated this civil rights action on July 23, 2019, and was granted leave to amend on two occasions. ECF Nos. 1, 22, 26. Plaintiff's second amended complaint is the operative complaint. ECF No. 27. The complaint was served upon Defendants.

This cause is presently before the Court upon Defendant Mack's motion to dismiss and the motion to dismiss filed separately by Defendants Robertson and Dawson. ECF Nos. 36, 38. Defendant Mack maintains that Plaintiff failed to exhaust his administrative remedies, as required, under the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a). ECF No. 36. In their respective motions to dismiss, Defendants Mack, Robertson, and

Dawson maintain that dismissal is also appropriate as a matter of law under Section 1983 because Plaintiff fails to state a claim that his placement in direct observation was without due process and Defendants engaged in civil conspiracy. ECF No. 38. Plaintiff filed an unsworn response to Defendant Mack's motion to dismiss, ECF No. 39, and an unsworn reply to the motion to dismiss filed by Robertson and Dawson, ECF No. 42.

After careful review of the pleadings in this matter, for the reasons stated below, both motions to dismiss should be GRANTED and Plaintiff's complaint should be DISMISSED.

## I.    Plaintiff's Second Amended Complaint, ECF No. 27.

Plaintiff alleges the excessive force incident occurred on October 12, 2018, at approximately 8:30 a.m. Id., p. 4. Plaintiff was in confinement unit G-41 when an unnamed officer came to his cell door and ordered him to "cuff up" for his first appearance in court. ECF No. 27, p. 4. Admittedly, Plaintiff refused to submit to restraints, which necessitated the officer's entry into his cell and the use of some force to place the handcuffs, shackles, and restraint chain on him. Id. Plaintiff then stopped resisting. Id. Plaintiff does not challenge this use of force.

Next, Defendant Mack grabbed Plaintiff by the arm, led him out of the cell toward "the slider area . . . where there is no camera . . . [and] slammed"

him "into the wall with such force that it knocked him unconscious." Id., p. 5. Plaintiff alleges, when he "regained consciousness [,] he was facing downward on his knees being held up by his shirt, resulting in being choked, [and] hindering his ability to breath[e]." Id. However, contrary to this allegation, Plaintiff's exhibit "A-5," an "emergency visit" report, indicates that Plaintiff denied any loss of consciousness. Id., p. 41. Plaintiff claims his blood was "on the wall, floor, and running down his face landing on his clothes and floor." Id., pp. 5-6. The escort continued with another officer on the opposite side of Plaintiff directing him into the hallway, where there were cameras, and, subsequently, to the medical unit for treatment. Id., p. 6. Plaintiff claims that the cut above his right eye required four stitches, but no officer or medical staff asked him any questions. Id. While at the medical unit, Plaintiff told Defendant Mack he "would be suing him for slamming his face into the wall." Id., pp. 6-7. After receiving medical treatment, officers escorted Plaintiff to his cell without incident. Id., p. 7.

About twenty minutes later, Lieutenant Parramore informed Plaintiff that Defendant Mack directed that Plaintiff be moved from his cell to "direct observation" (D.O.). Id., p. 7. Plaintiff was placed in restraints; and officers escorted Plaintiff to D.O., where he remained for twelve days. Id., pp. 7, 11. Plaintiff claims that, on arrival, he "was stripped of all his clothes, belongings

and linens, [and] then given a paper smock to wear." Id. The cell was cold and empty except for a thin mat on the floor; and Plaintiff was subjected to constant lighting. Id., pp. 7, 9.

Three days later, on October 15, when Ms. Robertson, the supervisor "in charge of D.O., made her rounds in the unit," Plaintiff asked her why he was placed in the unit. Id., p. 7. Robertson responded, "she did not know but would get back to him with the information." Id., p. 8. Two days later, on October 17, Robertson returned and advised Plaintiff "he would be staying a while" but did not provide a reason. Id. Plaintiff claims that he told Robertson he was not "suicidal, homicidal, or being disruptive," but Robertson did not respond. Id. When Plaintiff asked Robertson for his clothing, she answered, "she would see." Id.

Plaintiff claims when Robertson made her rounds again, he repeated his question about his status, but she ignored him. Id. Plaintiff alleges that while in D.O., he continued to ask for his clothes and was ignored. Id. Plaintiff generally alleges that although there is a "step-down" process for inmates to have their personal items and clothing returned when they exhibit positive behavior, Robertson would not let Plaintiff follow the process. Id., p. 9. Plaintiff maintains the deprivations, coupled with the excessive force incident, resulted in mental suffering. Id.

Plaintiff alleges that he asked other unnamed officers and a sergeant if they could determine the reason for his D.O. placement. Id., p. 9. Someone told Plaintiff it was because the "rules were being broken." Id. Plaintiff asked the sergeant "if he could 'write it up'" but the sergeant told Plaintiff he would have to wait until his release from D.O. because no writing materials were permitted. Id., p. 10. For these reasons, Plaintiff alleges he was unable to initiate the grievance process for the excessive force incident and the subsequent placement in D.O. Id. Plaintiff could not submit written "sick call" requests either but, instead, had to make verbal requests. Id., p. 10. Plaintiff maintains these circumstances made clear to him that he would not be permitted to file a grievance. Id., p. 11. On October 24, Plaintiff was taken to the medical unit to remove his sutures and was then transferred to Lake Butler (a state prison and hospital) to serve out his sentence. Id., p. 11.

Plaintiff alleges generally that Defendant Dawson falsified a medical report in a conspiracy with Robertson and Mack to cover up the misconduct, to justify the D.O. placement, and to inflict emotional distress. Id., pp. 11-13. Plaintiff claims his exhibits show he has no history of mental health issues, behavioral problems, or suicidal tendencies until Dawson created a report two hours after the incident documenting "extreme mood swings and suicidal thoughts." Id., p. 12. Plaintiff accuses Dawson of writing the report without

making these observations; and claims video evidence shows she did not interview Plaintiff. Id.

Plaintiff alleges that as a result of Defendant Mack's assault, he suffered "pain in his head," "pain and mental anguish," a cut above his right eye, which necessitated stitches; and he remains "in fear of . . . further attacks." Id., p. 6. As relief, Plaintiff demands compensatory damages in the amount of $50,000 and punitive damages of $50,000 against Defendant Mack and the same against Defendant Robertson. Id., p. 16. Plaintiff seeks $10,000 in compensatory damages and $10,000 in punitive damages against Defendant Dawson. Id. Plaintiff requests fees incurred as a result of the lawsuit and injunctive relief in the form of Defendant Mack's removal or demotion or an order for Defendant Mack to complete anger management training and policy and procedure training. Id. Finally, Plaintiff asks the Court for a declaration that the Defendants violated his constitutional rights.

It is relevant to this inquiry to note that in his second amended complaint, Plaintiff vaguely describes the circumstances surrounding his detention at Leon County Jail (LCJ).[1] ECF No. 27, p. 4. Plaintiff stated only

---

[1] Plaintiff does not state in his complaint that the incident occurred at LCJ. However, Plaintiff alleges that Defendant Mack is employed at LCJ, ECF No. 1, p. 2; and Plaintiff's exhibits confirm his detention at the same, id., pp. 25, 33, 35, 42, 44, and 48.

that he was sentenced to a prison term a few weeks earlier and was awaiting transport to the state prison when he committed another offense that delayed the transfer and resulted in his "placement in confinement for security reasons." Id., p. 4. Plaintiff's attached exhibits clarify the circumstances. Plaintiff was transferred from Leon County Detention Facility (LCDF) to LCJ, id., pp. 28-33 (Plaintiff's exhibit "A-2"), at least four days prior to the instances giving rise to Plaintiff's allegations. Id., p. 25. Also, about seven hours before the incident in question, LCJ designated Plaintiff for "segregation placement" because he "escap[ed] from the facility (LCDF)" and "[ran] through the woods." Id., pp. 35-37, 39 (Plaintiff's exhibits "A-3" and "A-4").[2]

## II.    Standard of Review

"A pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). To survive a motion to dismiss, the "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).

---

[2] In his reply to the motion to dismiss filed by Robertson and Dawson, Plaintiff provides additional details about his escape. ECF No. 42, p. Plaintiff admits that, on September 26, 2018, he was sentenced to thirty years in prison for grand theft and possession of ammunition by a convicted felon. Id. On October 8, Plaintiff escaped from Leon County Jail. Id. Three days later, on October 11, he was apprehended and returned to the county jail. Id. The following day, the alleged excessive force incident occurred. Id.

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556). Although legal conclusions can provide the framework of the complaint, they must be supported by factual allegations. Id. at 679. Detailed factual allegations are not required, but the complaint must offer more than "labels and conclusions" or "a formulaic recitation of the elements of the cause of action." Twombly, 550 U.S. at 555 (citation omitted). The factual allegations must adequately "raise a right to relief above the speculative level." Id. (citations omitted). "The mere possibility the defendant acted unlawfully is insufficient to survive a motion to dismiss." Sinaltrainal v. Coca-Cola Co., 578 F.3d 1252, 1261 (11th Cir. 2009) (citation omitted), *abrogated on other grounds by* Mohamad v. Palestinian Auth., 566 U.S. 449 (2012).

When considering a motion to dismiss, a court must construe the complaint in the light most favorable to the plaintiff and take the factual allegations therein as true. See Brooks v. Blue Cross & Blue Shield of Fla., Inc., 116 F.3d 1364, 1369 (11th Cir. 1997) (citing SEC v. ESM Grp., Inc., 835 F.2d 270, 272 (11th Cir. 1988)).

The PLRA requires a prisoner to exhaust his administrative remedies before filing a civil rights action. 42 U.S.C. § 1997(e); Porter v. Nussle, 534

U.S. 516, 524 (2002); Gould v. Owens, 383 F. App'x 863 (11th Cir. 2010). There is no discretion to waive this requirement. Id. The PLRA requires proper exhaustion in compliance with the procedural rules and deadlines of an institution's grievance system. Woodford v. Ngo, 548 U.S. 81 (2006). The exhaustion requirement "reduces the quantity and improve[s] the quality of prisoner suits" and affords prison officials the opportunity to address complaints internally before a Section 1983 case is filed. Porter, 534 U.S. at 525. This includes the filling of an appeal. Even if an appeal were futile, the requirement cannot be waived. Alexander v. Hawk, 159 F.3d 1321, 1325-26 (11th Cir. 1998).

The issue of whether a prisoner failed "to properly exhaust available administrative remedies under the PLRA should be treated as a matter in abatement." Bryant v. Rich, 530 F.3d 1368, 1374 (11th Cir. 2008). Such a "defense is treated 'like a defense for lack of jurisdiction,' although it is not a jurisdictional matter." Id. It is "not generally an adjudication on the merits." Id.

Ruling on a "motion to dismiss for failure to exhaust administrative remedies is a two-step process." Turner v. Burnside, 541 F.3d 1077, 1082 (11th Cir. 2008) (citation omitted). "First, the court looks to the factual allegations in the defendant's motion to dismiss and those in the plaintiff's response, and if they conflict, takes the plaintiff's version of the facts as true."

Id. "If, in that light, the defendant is entitled to have the complaint dismissed for failure to exhaust administrative remedies, it must be dismissed." Id. (citing to Bryant, 530 F.3d at 1373-74).

"If the complaint is not subject to dismissal at the first step, where the plaintiff's allegations are assumed to be true, the court then proceeds to make specific findings in order to resolve the disputed factual issues related to exhaustion." Turner, 541 F.3d at 1082 (citing Bryant, 530 F.3d at 1373-74, 1376). The burden of proof for evaluating an exhaustion defense rests with the Defendant. Jones v. Bock, 549 U.S. 199, 216 (2007) ("We conclude that failure to exhaust is an affirmative defense under the PLRA, and that inmates are not required to specially plead or demonstrate exhaustion in their complaints."); Turner, 541 F.3d at 1082-83.

## III. Discussion

### A. Plaintiff failed to exhaust his administrative remedies.

In his motion to dismiss, Defendant Mack asserts that Plaintiff's operative complaint warrants dismissal because Plaintiff failed to exhaust his administrative remedies as required under the PLRA. ECF No. 36, p. 2. Defendant Mack points to Plaintiff's own admissions in his complaint that he did not file a grievance for any of the alleged constitutional violations. Id., p. 3. Defendant contends that Plaintiff's operative complaint is an admission

that while in D.O., "[Plaintiff] did not inform any of [the staff or officers] that he wanted to begin the grievance process" but had opportunity to do so as evidenced by his verbal sick call request. Id., p. 8. Defendant Mack contends that Plaintiff's reliance on his statement to the sergeant to "write it up" evidences his attempt to file a grievance is "insufficient to initiate the grievance process, let alone to fully exhaust it," particularly, because Plaintiff's attempt was generic and did not identify the problem. Id., p. 9.

Defendant Mack asserts that Plaintiff's exhaustion explanation has evolved from the initial complaint to the operative complaint. Upon careful review, the Court finds that Plaintiff's first and second amended complaint are nearly identical on the general allegations -- Defendants placed Plaintiff in D.O. to cover up the excessive force incident; when Plaintiff asked the sergeant if he could "write it up," Plaintiff was denied writing materials based on his D.O. designation; and Plaintiff could only make verbal requests for sick call.[3] ECF No. 21, p. 7.

---

[3] There are several factual differences in Plaintiff's original complaint compared with the operative complaint, initially: (1) Plaintiff did not claim that any handbook or writing materials were taken or denied; (2) Plaintiff did not claim that he asked a sergeant to "write it up"; and (3) and Plaintiff alleged that because he was transferred from the jail he was unable to file a grievance. ECF No. 1, pp. 5-6. Defendants filed motions to dismiss for failure to exhaust administrative remedies. ECF No. 15 and 19. In response, Plaintiff filed a first amended complaint and, again, did not allege he had a handbook or writing materials taken from him but instead alleged that he did not have access to a handbook or writing materials. ECF No. 21, p. 7. Plaintiff did not claim that his transfer interfered with his ability to file a grievance. Id. Plaintiff added that he did not have access to the

Accordingly, the Court looks to Plaintiff's unverified reply memorandum; although, to the extent Plaintiff attempts to present new facts[4] or argument, the Court declines to consider those raised for the first time in a reply brief.[5] "Arguments raised for the first time in a reply brief are not properly before a reviewing court." United States v. Coy, 19 F.3d 629, 632 (11th Cir. 1994); Sapuppo v. Allstate Floridian Ins. Co., 739 F.3d 678, 681 (11th Cir. 2014. The Court must "accep[t] the facts alleged in the complaint as true, drawing all reasonable inferences in the plaintiff's favor, and limiting . . . review to the four corners of the complaint." Keating v. City of Miami, 598 F.3d 753, 762 (11th Cir. 2010) (citation omitted).

Plaintiff concedes that he is required to exhaust his administrative remedies. ECF No. 39, p. 2. In his reply, Plaintiff relies on Ross v. Blake, 136 S. Ct. 1850 (2016), to excuse his failure to exhaust when the remedy is "never offered by prison officials," "is almost unknowable to prisoners," and where "prisoners are thwarted or penalized for seeking it." Id.

---

handbook outlining the grievance policy. ECF No. 21, p. 7. Plaintiff did not include this factual allegation in the operative, second amended complaint.

[4] In his unsworn reply, Plaintiff claims his grievance efforts were thwarted when he was transferred to another facility without any documentation justifying the transfer. ECF No. 39, p. 4.

[5] Pursuant to N.D. Fla. Loc. R. 5.7(B), in Section 1983 cases, pro se plaintiffs "must set out specific claims and supporting facts" in their "petition, motion, or complaint."

Prisoners who do not know the grievance process are not excused from using it simply because no one affirmatively explained it to him. A process is unknown and unknowable when the prisoner exercises reasonable effort to obtain the information about the process. See Goebert v. Lee County, 510 F. 3d 1312, 1322 (11th Cir. 2007). Here, however, and contrary to Goebert, where prisoners were not allowed to see the manual containing the grievance process, Plaintiff makes no allegation in his operative complaint that he was denied information about the grievance process. Rather, Plaintiff alleges that because he was denied writing materials and other personal items while in direct observation, he assumed that he could not submit a written grievance. Plaintiff does not contend, either in his complaint or in his reply, that anyone purposefully withheld information from him about the grievance process. Plaintiff had ample opportunity to file a grievance even before placement in D.O. -- when he was immediately taken to medical and, later, when he was returned to his cell. Plaintiff could have grieved even while in D.O., when he spoke with Robertson on more than one occasion and with other officers in attempting to determine his status. Plaintiff also went to medical before his transfer to have his sutures removed but did not use that as an opportunity to file a grievance either.

Plaintiff makes no allegation that he attempted to file a specific grievance about the excessive force incident or anything else.

In Brown v. Sikes, 212 F.3d 1205, 1210 (11th Cir. 2000), the Eleventh Circuit went a step further and held that: "42 U.S.C. § 1997e(a) requires a prisoner to provide in his administrative grievance as much relevant information about his claims . . . as the prisoner reasonably can provide." The failure to name a prison official or to specify the facts or nature of prisoner's claim in his grievance could later prove fatal to a civil rights claim. See Moore v. McNeil, Case No. 09-22754-CIV-Seitz/White, 2016 U.S. Dist. LEXIS 118218 (S.D. Fla. Sept. 1, 2016) (order adopting magistrate judge's report and recommendation). For example, where a grievance offers "little in the way of details" and does not include dates, names, or fails to indicate mistreatment by staff, it cannot be alleged that the grievance process is exhausted. Williams v. Barrow, 559 F. App'x 979, 986 (2014). See also Goldsmith v. White, Case No. 5:04cv72-RH/WCS, 357 F. Supp. 2d 1336, 1340-41 (N.D. Fla. 2005) (inmate who filed a grievance failed to exhaust his administrative remedies because he failed to include all known facts and failed to identify the problem of discrimination based on sexual orientation). In short, Plaintiff must provide some level of information.

Here, Plaintiff's request to the sergeant to "write it up" is simply is too vague to be considered an attempt to file a grievance. Plaintiff does not contend that he made any attempt to file any specific grievance (before, during, or after D.O. placement) either verbally or in writing. Plaintiff cannot claim that the grievance process was unknowable simply because he made the assumption that he could not use it and no one corrected his assumption. Plaintiff raised new allegations in his reply, notably, before transferring him to D.O., jail officials took his property, which included a handbook and writing materials, and "thwarted" him from filling a grievance by transferring him to another correctional "facility without any documentation justifying" the transfer. ECF No. 39, p. 4. Not only are these new, unsworn facts and allegations not entitled to the presumption of truth, they are contrary to Plaintiff's own complaint. Plaintiff stated in his complaint that he was at LCJ waiting to be transferred to a state prison but his own additional "offense," the escape from the facility, is what delayed his transfer. Accordingly, the purpose of Plaintiff's transfer to Lake Butler had nothing to do with the incidents alleged. The factual allegations in Plaintiff's complaint do not support his claims now that he was "thwarted" in his attempts to file a grievance. Even if the Court were to accept the allegation that Plaintiff's handbook was later taken from him when he was transferred to D.O., then

at some point Plaintiff had been allowed to review it when it was in his earlier possession.

Finally, Plaintiff does not contend that he attempted to file even an untimely grievance; thus, he "cannot be considered to have exhausted his administrative remedies." Harper v. Jenkin, 179 F.3d 1311, 1312 (11th Cir. 1999) (*per curiam*). A prisoner's Section 1983 claims are procedural defaulted when he fails to exhaust his administrative remedies. See Johnson v. Meadows, 418 F.3d 1152, 1159 n.1 (11th Cir. 2005). As Plaintiff was warned on the Court's complaint forms, ECF Nos. 1 and 27, he must exhaust his administrative remedies before seeking relief in a Section 1983 action.

Defendant Robertson, in her first motion to dismiss, asserted certain defenses including Plaintiff failed to exhaust his administrative remedies. ECF No. 19, pp. 10-11. The Court directed Plaintiff to reply to the motion to dismiss. ECF No. 20. Instead, Plaintiff chose to file an amended complaint and did not address Defendant Robertson's arguments. ECF No. 21. Plaintiff received an extension of time and then filed the operative, second amended complaint and subsequent reply which still fails to address Robertson's defenses. ECF Nos. 27, 39. Based on Plaintiff's complaint, Plaintiff's failure to respond to the affirmative defense raised by Robertson, and for the reasons stated above, the Court should find that Plaintiff also failed to

exhaust his administrative remedies against Defendant Robertson. For these reasons, Plaintiff's complaint is due to be dismissed.

> B. **Plaintiff fails to state a claim that his placement in direct observation violated the Fourteenth Amendment.**

Plaintiff claims that Defendants placed Plaintiff in direct observation without justification and, as alleged in his unsworn reply, without affording him a due process hearing, ECF No. 39, p. 5. All Defendants argue that Plaintiff fails to state a claim as a matter of law and because he fails to allege sufficient specific facts. ECF No. 36, pp. 12-14; ECF No. 38., pp. 7. In his reply, Plaintiff admits that he is not entitled to a specific housing assignment and that confinement was appropriate due to his recent escape but that "G-pod was sufficient" because he did not have any mental health issues to support the placement. ECF No. 42, p. 6. Even when construing Plaintiff's allegations as true, Plaintiff fails to state a claim.

The failure of a jail to follow its own rules or regulations, without more, does not necessarily give rise to a constitutional violation. "Not every violation by a state agency of its own rules rises to the level of a due process infringement." Smith v. Georgia, 684 F.2d 729, 732 (11th Cir. 1982); see also Magluta v. Samples, 375 F.3d 1269, 1279 n.7 (11th Cir. 2004). Moreover, "[t]he Due Process Clause does not protect every change in the conditions of confinement having a substantial adverse impact on the prisoner." Sandin

v. Conner, 515 U.S. 472, 478 (1995). "Prisoners do not have a liberty interest in being confined to a general population cell rather than the more austere and restrictive administrative segregation quarters." Turner v. Warden, GDCP, 650 F. App'x 695 (11th Cir. 2016) (internal citations and quotations omitted). "Convicted inmates have no right to a due process hearing before being punished for disciplinary infractions unless the punishment is demonstrably harsher than the ordinary conditions of prison life." Jacoby v. Baldwin Cty., 835 F.3d 1338, 1347 (11th Cir. 2016). Where a prisoner has been placed in disciplinary confinement, the Due Process Clause is implicated in two circumstances: (1) "when an increased restraint 'exceed[s] [his] sentence in such an unexpected manner'" and (2) "'when a change in his conditions of confinement imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.'" Jacoby v. Baldwin Cty., 835 F.3d 1338, 1346-47 (11th Cir. 2016) (citing Sandin, 515 U.S. at 484).

It is well-settled that short-term placement in disciplinary confinement does not violate due process. Sandin, 515 U.S. at 484 (no violation in a thirty-day term); Rodgers v. Singletary, 142 F.3d 1252 (11th Cir. 1998) (no liberty interest existed when prisoner was kept in administrative confinement for two months pending the resolution of criminal charges arising from an altercation

with a corrections officer); Joe v. Nelson, Case No. 5:14-CV-0184-MIT-CHW, 2014 U.S. Dist. LEXIS 87560, *8 │2014 WL 2930856 (M.D. Ga. Jun. 27, 2014) (ninety-day term of punitive confinement did not violate due process).

In the context of the Eighth Amendment's ban on cruel and unusual punishment, "[t]he Constitution does not mandate comfortable prisons, but neither does it permit inhumane ones." Farmer v. Brennan, 511 U.S. 825, 832 (1994). The prisoner must demonstrate that the prison condition is "extreme" and "pose[s] an unreasonable risk of serious damage to the [prisoner's] future health or safety." Chandler v. Crosby, 379 F.3d 1278, 1289 (11th Cir. 2004). See Alfred v. Bryant, 378 F. App'x 977 (11th Cir. 2010) (finding the district court properly dismissed the case as frivolous where prisoner was relegated to disciplinary confinement for eighteen days without a mattress or properly functioning toilet and his complaints of fatigue, stiffness, soreness, lower back pain, headaches nausea, anxiety, and fear were insufficient to allege risk to health and safety).

Here, Plaintiff was kept in D.O. for a short term -- twelve days -- was only permitted a paper smock, made to sleep on a mat on the floor with the lights on always. Nonetheless, these conditions are not sufficiently extreme to sufficiently state a violation of Due Process claim because there was no atypical and significant deprivation that caused a major disruption,

particularly, when compared with other similar cases. See White v. Marshall,
No. 2:08-cv-362-CSC, 2008 U.S. Dist. LEXIS 90351, 2008 WL 4826283, at
*3-4, 9 (M.D. Ala. Nov. 5, 2008) (finding no deprivation of "the minimal
civilized measures of life's necessities" where prisoner was confined for thirty
days in a cell with only a drain in the floor for urinating, cold sandwiches three
times a day, and no clothing except for a paper gown; twenty-four days
without a mattress, blanket, wash basin, personal hygiene items, no lights,
and no ventilation; and was not permitted to shower or exercise for fourteen
days); Lloyd v. Briley, No. 05 C 1499, 2007 U.S. Dist. LEXIS 21247, 2007
WL 917385, at *7-8 (M.D. Ill. Mar. 23, 2007) (prisoner confined to a strip cell
with no sheets, toilet paper, or personal property for thirteen days did not
give rise to procedural due process claim); King v. Frank, 328 F. Supp. 2d
940 (W.D. Wis. July 27, 2004) (where a prisoner was forced to wear a paper
gown for forty days was not "an atypical and significant hardship.").

Similarly, there is nothing in Plaintiff's complaint which suggests the
conditions of confinement amounted to cruel and unusual punishment. While
the conditions were more than likely uncomfortable, ultimately, Plaintiff made
no claim that his health or safety was ever at risk as a result of these
conditions. A general claim that these conditions caused "mental suffering"
is inadequate.

It is worth noting that Plaintiff's own assertions that he never had any issues which would warrant the D.O. assignment are inapposite to the record. Plaintiff's factual allegations and exhibits show that, at a minimum, he physically resisted officers' attempts to handcuff him for transfer (ECF No. 27, p. 4), suffered from schizophrenia (id., p. 25), and had escaped from jail shortly before the alleged incident (id., pp. 35-37, 41). Particularly, these factors further undermine his claim that there was "no justification" for his placement in direct observation. Because Plaintiff has failed to set forth a plausible Due Process claim or an Eighth Amendment claim relating to his D.O. placement, these claims should be dismissed.

   C. Plaintiff fails to state a civil conspiracy claim.

Plaintiff claims the Defendants conspired to cover up the excessive force incident by placing him in D.O. Defendant Mack asserts that Plaintiff has failed to provide "specific factual allegations regarding the time, place, and manner of the conspiracy" and that Plaintiff's claim is conclusory and "wholly inadequate." ECF No. 36, pp. 15-16. Defendants Robertson and Dawson point to Plaintiff's records to support their position that Plaintiff's placement was reasonable: Plaintiff escaped from Leon County Jail, had been previously diagnosed as a schizophrenic, and Dawson placed Plaintiff on constant watch because he was having suicidal thoughts. ECF No. 38,

pp. 2-3, 7. Defendants Robertson and Dawson also maintain that Plaintiff's conspiracy claim fails because it is wholly conclusory and non-specific. Id., pp. 8-9. Plaintiff largely restates his claim in his reply. ECF No. 42, pp. 10-12.

"To establish a claim of conspiracy under section 1983, a plaintiff must show that the parties reached an understanding to deny the plaintiff his or her rights and prove an actionable wrong to support the conspiracy. The complaint must inform the defendants of the nature of the conspiracy which is alleged. It is not enough to simply aver in the complaint that a conspiracy existed." Fullman v. Graddick, 739 F.2d 553, 557 (11th Cir. 1984) (citing Bailey v. Bd. of Cty. Comm'rs of Alachua Cty., Fla., 956 F.2d 1112, 1122 (11th Cir. 1992)) (internal quotations omitted).

Plaintiff's bare assertion in his complaint that there was a civil conspiracy is a legal conclusion that fails to state a claim on which relief might be granted: "Plaintiff can only conclude that Ms. Dawson falsified this report in collusion with" the other defendants "to justify placement in direct observation in an after the fact civil conspiracy to cover up misconduct and intentionally inflict emotional distress." ECF No. 27, p. 13. Plaintiff fails to explain how the Defendants conspired with one another. Although Plaintiff attempts to explain the conspiracy in his unsworn reply, this is his first

attempt -- albeit an improper attempt -- to present facts to support the claim. Plaintiff claims that Mack knew he used excessive force and "faced repercussions for his actions" so "he used his authority and influence to hide the injured Plaintiff as deep as possible in the jail so that he was unable to report or grieve the excessive force." ECF No. 39, p. 10. However, this account is contrary to Plaintiff's narrative in his operative complaint: he was immediately brought to medical following the use of force incident (not "hid[den]") and, afterward, was brought back to his original cell for some time before being transferred to D.O. Notably, the Court has granted Plaintiff previous opportunities to amend his complaint to properly state his claims but he has failed to cure the noted deficiencies. Here, Plaintiff's claim that Defendants participated in a "civil conspiracy" is, simply, unsupported. Accordingly, Plaintiff's fails to state a claim.

Finally, as to Plaintiff's claims against Defendants Robertson and Dawson for monetary damages, "it is well settled that compensatory damages may be awarded based on physical pain and suffering caused by a defendant's use of excessive force, apart from any damages based on monetary loss." Slicker v. Jackson, 215 F.3d 1225, 1231 (11th Cir. 2000). Also, a plaintiff "may be awarded compensatory damages based on demonstrated mental and emotional distress, impairment of reputation, and

personal humiliation." <u>Id</u>. Nonetheless, a plaintiff may be entitled to nominal damages even where there is no injury in cases of false arrest, malicious prosecution, and illegal detention. <u>See</u> <u>Kelly v. Curtis</u>, 21 F.3d 1544, 1557 (11th Cir. 1994). Plaintiff does not sufficiently state any claim that would warrant monetary damages as relief. Accordingly, Plaintiff's claims for compensatory damages against Defendants Robertson and Dawson should be DISMISSED.

It is futile for Plaintiff to further amend his complaint against Defendants Robertson and Dawson. Moreover, Plaintiff is not entitled to amend his complaint each time Defendants file a motion to dismiss, particularly, when the Court has provided him liberal opportunity to amend with instructions and directives identifying Plaintiff's deficiencies. More importantly, as explained above, the PLRA's exhaustion requirement bars Plaintiff from seeking relief from the Court.

## IV.   Conclusion and Recommendation

It is respectfully recommended that Defendant Mack's Motion to Dismiss be GRANTED for failure to exhaust administrative remedies pursuant to 28 U.S.C. § 1997(e) and that the claims against Defendant Mack be DISMISSED. It is also recommended that the Motion to Dismiss filed by Defendants Robertson and Dawson be GRANTED and Dawson be

DISMISSED. It is further recommended that the case be CLOSED and the Order adopting this Report and Recommendation direct the Clerk of Court to note on the docket that this cause was dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).

IN CHAMBERS at Tallahassee, Florida, on October 29, 2020.

**/s/ Martin A. Fitzpatrick**
**MARTIN A. FITZPATRICK**
**UNITED STATES MAGISTRATE JUDGE**

<u>NOTICE TO THE PARTIES</u>

Within fourteen (14) days after being served with a copy of this Report and Recommendation, a party may serve and file specific written objections to these proposed findings and recommendations. Fed. R. Civ. P. 72(b)(2). A copy of the objections shall be served upon all other parties. A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof. Fed. R. Civ. P. 72(b)(2). Any different deadline that may appear on the electronic docket is for the Court's internal use only and does not control. If a party fails to object to the Magistrate Judge's findings or recommendations as to any particular claim or issue contained in this Report and Recommendation, that party waives the right to challenge on appeal the District Court's order based on the unobjected-to factual and legal conclusions. <u>See</u> 11th Cir. Rule 3-1; 28 U.S.C. § 636(b)(1)(C).